UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY JEAN PIEPER,<br><br>    Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, Commissioner of Social Security,<br><br>    Defendant. | No. 1:20-cv-01114-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 18)** |

## I. Introduction

Plaintiff Tracy Jean Pieper ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 18, 19, 20. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

## II. Procedural Background

On November 7, 2016 Plaintiff applied for benefits alleging disability as of August 1, 2006 due to post traumatic stress disorder (PTSD), anxiety, major depressive disorder, restless limbs, stuttering, back pain and stomach issues. AR 179. The Commissioner denied the application initially on February 17, 2017, and on reconsideration on May 30, 2017. AR 99; 108.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on February 28, 2019. AR 36–70. On April 1, 2019 the ALJ issued a decision denying Plaintiff's application. AR 17–35. The Appeals Council denied review on March 19, 2020. AR

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 8 and 10.

6–11. On August 12, 2020 Plaintiff filed a complaint in this Court. Doc. 1.

### III. Factual Summary[2]

#### A. Plaintiff's Testimony

Plaintiff was the victim of an assault at Merced County Jail after which she suffered from anxiety. AR 44. Anxiety caused her heart to race. AR 44. She was not good at being around people. AR 44. She was not the same person after the assault. AR 44. She struggled with uncontrolled movements of her limbs and fingers. AR 44. The uncontrolled movements improved after working with Dr. Harry but flared up when she was around people. AR 44. She had issues with her memory. AR 48. Her concentration difficulties rendered her unable to read or focus on a tv show. AR 48–49. She had difficulty sleeping which caused day time tiredness. AR 60–61.

#### B. Medical Records

During the relevant period (from her August 2006 alleged onset date through her December 2010 date last insured (DLI)) Plaintiff treated with Drs. Trumbull and Williamson for anxiety, depression and PTSD for which she underwent therapy and was prescribed several psychotropic medications. AR 307–08; 304–13; 274–82; 283–90; 330–31; 329; 327; 337; 742. Treatment records documented persistent symptoms of PTSD, anxiety and physical spasticity. *Id.* In 2007 Plaintiff underwent a forensic psychiatric evaluation with Dr. Terrell related to her assault. AR 293–300. He opined her prognosis was good if she received appropriate counseling and medications. AR 300. Plaintiff re-established mental health care shortly after the relevant period due to continued difficulties with anxiety, depression and PTSD. AR 441–94; 622–728.

#### C. Consultative Exams; Medical Opinions; Administrative Findings

Plaintiff's treating physician, Dr. Harry[3], completed a Mental Residual Functional Capacity Questionnaire in July 2017. AR 578–80. Dr. Harry opined as follows: 1) that Plaintiff's mental impairments precluded her functioning in 19 out of 20 work related categories between 5 to 10 percent of the workday; 2) that she would be absent from work 5 or more days per month due to

---

[2] Because the parties are familiar with the background facts the summary herein will focus on the facts specifically at issue in this appeal.

[3] Although there is no dispute that the treating physician rule applies to Dr. Harry's opinions, there are no medical records reflecting that Dr. Harry treated Plaintiff during the relevant period. Rather, Plaintiff treated with Drs. Trumbull and Williamson (as described above) during the relevant period, neither of whom submitted an opinion.

her impairments; and, 3) that she would be unable to complete an 8-hour workday on 5 or more days per month due to her impairments. AR 580. Dr. Harry completed two additional questionnaires in July 2018 and November 2018 in which he expressed similar opinions. AR 582–84; 618–20.

Dr. Michiel performed a consultative psychiatric examination in March 2009 at the request of the agency. AR 350–53. Dr. Michiel observed that Plaintiff sat on the end of her chair, rubbed her hands together and openly cried. AR 351. She could recall two of three objects after five minutes. *Id*. Her mood was depressed and affect was intense and fearful. AR 352. Dr. Michiel diagnosed anxiety disorder and depressive disorder, comorbid for PTSD. AR 352. He opined she could carry out simple repetitive job instructions and interact with coworkers and the public, but could not carry out an extensive variety of technical or complex instructions. AR 352.

Non-examining state agency physicians Luu and Nawar reviewed Plaintiff's medical file at the initial and reconsideration levels, respectively. Both concluded that Plaintiff was capable of simple routine tasks with limited public contact. AR 372–74; 380.

**IV.    Standard of Review, Generally**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066

(9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

## V.     The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## VI.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity

during the period from her alleged disability onset date of August 1, 2006 through her date last insured of December 31, 2010 (the "relevant period"). AR 22. At step two the ALJ found that Plaintiff had the following severe impairments: depressive disorder, anxiety disorder, attention deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD). AR 26. At step three the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 23–24. Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: simple and routine tasks; occasional interaction with co-workers but not in a team or tandem setting; no interaction with the general public. AR 24. At step four the ALJ found that Plaintiff could not perform her past relevant work as a school bus driver. AR 28. At step five, based on the VE's testimony, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: laundry worker II, cleaner II and hand packer. AR 29. Accordingly, the ALJ found that Plaintiff had not been under a disability at any time between her alleged disability onset date of August 1, 2006, and her date last insured of December 31, 2010. AR 30.

**VII.    Issues Presented**

Plaintiff presents two concise arguments spanning about one page each. First, Plaintiff contends the ALJ improperly discounted her treating physician's opinion; Second, Plaintiff contends the ALJ improperly discounted Plaintiff's subjective statements.

    **A.    Dr. Harry's Opinion**

        **1.    Applicable Law**

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are

not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations). An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Regardless of source, all medical opinions that are not given

controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### 2. **Analysis**

Dr. Harry opined as follows: 1) that Plaintiff's impairments precluded her mental functioning in 19 out of 20 work related categories between 5 to 10 percent of the workday; 2) that she would be absent from work 5 or more days per month due to her impairments; and, 3) that she would be unable to complete an 8-hour workday on 5 or more days per month due to her impairments. AR 580. Dr. Harry completed two additional questionnaires in July 2018 and November 2018 in which he expressed similar opinions. AR 582–84, 618–20. These opinions were contradicted by the opinions of the consultative examiner and both non-examining state agency physicians, all three of whom opined that Plaintiff had no restrictions beyond a limitation to simple routine tasks with limited public contact. AR 352; 372–74; 380. The ALJ was required therefore to offer specific and legitimate reasons for discounting Dr. Harry's opinions.

The ALJ offered the following discussion of Dr. Harry's opinions:

> Seven years after the DLI, Jonathan Harry, M.D., completed a mental residual functional capacity questionnaire on July 14, 2017 (Exhibit 20F/1-3). Dr. Harry specified that he treated the claimant for "over eight years" and said the limitations set forth in the questionnaire began on January 1, 2010, which is prior to the end of the DLI (Id. at 1/3). He diagnosed the claimant with PTSD and major depression with symptoms of nausea, fatigue, and sleep disturbance (Id. at 1). Dr. Harry opined that the claimant was limited for 5 to 10% of the eight-hour workday in nineteen of twenty subcategories under the mental abilities for understanding and memory, social interaction, and adaptation (Id. at 1-2). He added the claimant would miss work more than five days per month and would be unable to complete an eight-hour workday more than five days per month (Id. at 3).
>
> A second mental residual functional capacity questionnaire was submitted by Dr. Harry on July 28, 2018 (Exhibit 21 F). He noted the claimant was stable on her medications, but opined she was significantly more restricted as opposed to the

> previous year (Id. at 1-2). Dr. Harry wrote the claimant's limitations began in 2008 (Id. at 3).
>
> . . .
>
> Dr. Harry is given some weight given that he is a treating doctor of the claimant and treated her for a period of time prior to the DLI. However, lesser weight is given to his opinions because he completed them in 2017 and 2018, several years after the DLI. It is likely that Dr. Harry's opinion is more influenced by the more recent examinations of the claimant. Also, Dr. Harry only saw the claimant for a small portion of the time between the alleged onset date and DLI. Nonetheless, the undersigned gives Dr. Harry's opinion some weight to the extent that he establishes the claimant has severe mental impairments that interferes with her functional capabilities on a daily basis.
>
> Little weight is given to the opinions seen in Exhibit 24F because it was rendered in November 2018 with no reference that it pertained to the timeframe between the alleged onset date and DLI. Specifically, the limitations set in the mental residual functional capacity assessment began in 2011, when the claimant was first seen. Since a 2011 date took place after the DLI, it is not applicable since it does not assess the claimant's mental functioning between the alleged onset date and DLI.

AR 26, 28.

Plaintiff contends that Dr. Harry's opinions could not be discounted merely because they post-dated her DLI or because Dr. Harry only treated her briefly during the relevant period. Br. at 9–10, Doc. 18. Defendant responds that Dr. Harry's opinions failed to establish disabling limitations within the relevant period because Dr. Harry provided inconsistent responses as to the onset of Plaintiff's limitations and because Dr. Harry's most recent opinion identified more extreme limitations than the others. Resp. at 6–7, Doc. 19.

"While medical opinions that post-date the DLI may be relevant to determining whether a claimant was disabled before the DLI . . . post-DLI opinions may be properly discounted where the opinion does not have retrospective applicability or where the pre-DLI evidence is inconsistent with it." *Tamra C. v. Saul*, No. C20-5281-MAT, 2021 WL 322681, at \*2 (W.D. Wash. Feb. 1, 2021) (citing *Smith v. Bowen*, 849 F.2d 1222, 1225-26 (9th Cir. 1988), *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1461 (9th Cir. 1995), *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th

Cir. 1995)).

Here, the ALJ reasonably doubted that Dr. Harry's three opinions had retrospective applicability to the relevant period. As the ALJ observed, Dr. Harry gave three different answers regarding the onset date of the treating relationship and the onset date of Plaintiff's limitations, the third of which post-dated Plaintiff's DLI and was therefore excludable. AR 620. Even taking Dr. Harry's first two opinions at face value (irrespective of their inconsistency with the third opinion and inconsistency with each other), they indicated that Dr. Harry "only saw the claimant for a small portion of the time between the alleged onset date and DLI,". [4] AR 28 (citing AR 578, 584). Finally, all three opinions were completed about 7 years after the relevant period. Although none of these facts is independently dispositive, they collectively supported the ALJ's conclusion that Dr. Harry's opinions were influenced more by recent examinations of the Plaintiff. The reasonable inference is that Dr. Harry's opinions did not have retrospective applicability to the relevant period, even though the ALJ did not use that precise language. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

Further, the ALJ reasonably accorded more weight to the opinion of the consultative examiner who examined Plaintiff within the relevant period. To that end, the ALJ provided a detailed summary of mental status examinations dated October 2006, June 2007, March 2009 and November 2010. *See* AR 24 (describing October 2006 mental examination results including "focused attention, fair concentration, mostly normal speech, intact memory . . . average intelligence . . . relevant thought process . . . but she did have difficulty concentrating at times");

---

[4] Although the ALJ did not specifically make this observation, the Administrative Record contains no treatment records from Dr. Harry within the relevant period. This suggests that his third opinion was the one that correctly identified the onset of their treatment relationship as post-DLI, and further supports the ALJ's conclusion that his assessment was influenced by recent examinations, as opposed to examinations within the relevant period.

AR 25 (describing June 2007 mental status examination results including "fair to good short and long-term memory, excellent recall and interpretation of abstract thinking, fair to good general information . . . and did very poorly in the serial sevens"); AR 25 (describing March 2009 mental status examination results including goal directed thought process, good insight, full orientation, depressed mood, intense affect, and openly cried).

On balance, the ALJ concluded that these examinations "showed some deficits in her mental functioning, but not to the extent that it was disabling." AR 27. Accordingly, the ALJ gave significant weight to Dr. Michiel's examining opinion because it was consistent with the medical record and was an accurate measure of claimant's capabilities at the time of the exam. AR 27. The ALJ also gave significant weight to Dr. Luu's non-examining opinion because it was supported by the limited treatment notes and consultative examination. AR 27. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

As noted above, Drs. Michiel and Luu opined that Plaintiff had no mental limitations beyond a limitation to simple/routine tasks with limited public contact, whereas Dr. Harry opined that Plaintiff had work preclusive limitations in 19 out of 20 functional categories. Thus, the ALJ's reasoning for according great weight to Drs. Michiel and Luu applied with equal logical force to her related decision to accord little weight to Dr. Harry, even though the ALJ did not re-articulate that reasoning when analyzing Dr. Harry's opinions specifically. *See Wilson v. Berryhill*, 757 Fed.Appx. 595, 597 (9th Cir. 2019) (unpublished) ("Even if this portion of the [ALJ's] ruling is not a model of clarity, the ALJ's 'path may reasonably be discerned,' and so the court will still defer to the ALJ's decision."), *quoting Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012)).

### C.     Plaintiff's Subjective Statements

#### 1.     Applicable Law

The ALJ is responsible for determining credibility,[5] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

---

[5] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and, any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5.

### 2. **Analysis**

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and found no malingering. AR 26–27. Thus, the ALJ was required to articulate clear and convincing reasons for rejecting Plaintiff's reported symptoms. *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). The ALJ did so finding Plaintiff's allegedly disabling symptoms inconsistent with: 1) routine and conservative treatment, 2) lack of consistent, ongoing psychiatric treatment, and 3) psychological examinations which showed some deficits in mental function but not to a disabling extent. AR 26–27.

Plaintiff contends "the ALJ's assumption that gaps in specialized mental health care were due to a lack of severe symptoms is improper." Br. at 11. Indeed, as Plaintiff emphasizes, some Ninth Circuit cases have "criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Regennitter v. Comm'r Soc. Sec. Admin.,* 166 F.3d 1294, 1299–1300 (9th Cir. 1999) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

However, the Ninth Circuit has upheld an adverse credibility determination based on lack of mental health treatment where "there was no medical evidence that Molina's resistance [to treatment] was attributable to her mental impairment rather than her own personal preference." *See Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012), *superseded by regulation on other grounds*. Similarly here, there is no evidence that the gaps in Plaintiff's mental health treatment were

attributable to her mental impairments as opposed to personal preference. Thus, the lack of consistent psychiatric treatment was a legally sufficient basis for the ALJ to reject Plaintiff's subjective statements. *See id.*

Secondly, as summarized above, the ALJ provided a detailed discussion of the results of Plaintiff's multiple mental status examinations from 2006 to 2009 (AR 24–25) and subsequently concluded that they "showed some deficits in her mental functioning, but not to the extent that it was disabling." AR 27. Plaintiff does not specifically take issue with the accuracy of the ALJ's objective recitation of those examination results, or the ALJ's conclusion as to what those examinations showed on balance. Although subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

Finally, it is not clear that Plaintiff's statements, even if credited as true, would have resulted in more significant limitations than the ALJ incorporated in the RFC. Plaintiff identifies the following statements from her hearing testimony:

> As detailed above, Plaintiff testified that, during the relevant period she had significant difficulties being around other people and leaving her home. Ar. 43-44. Her mental symptoms were severe and manifested with physical problems, including uncontrollable jerking in her limbs. Ar. 44. She reported she had difficulty with memory and could not focus on anything, including to watch television. Ar. 48. She had difficulty sleeping due to nightmares and often had to nap due to tiredness. Ar. 60.

Br. at 11. The ALJ did not reject the notion that Plaintiff had some limitations in these respects. To the contrary, the ALJ acknowledged Plaintiff's testimony and concluded that Plaintiff was limited to simple routine tasks requiring simple decision making, only occasional interaction with co-workers, no interaction in a team or tandem setting, and no contact with the general public. AR

24.  The VE testified that these limitations were not work-preclusive.  To the extent Plaintiff believes that her testimony, if credited as true, would have required more restrictive limitations than the ALJ incorporated in her RFC, Plaintiff failed to explain why.  *See Juniel v. Saul,* No. 1:20-CV-0421 JLT, 2021 WL 2349878, at *7 (E.D. Cal. June 9, 2021) (" . . . the ALJ clearly acknowledged that Plaintiff reported anxiety in crowded situations in November 2016 and continued anxiety in crowds in September 2017. Plaintiff fails to show this limitation to which he testified . . . was not properly accounted for in his residual functional capacity, which indicated Plaintiff could not have public contact and limited interaction with co-workers.") (citations and quotations omitted).  The RFC here reasonably accommodated the limitations to which Plaintiff testified, such as her difficulties being around other people.

### VIII.  Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor Defendant Kilolo Kijakazi, Commissioner of Social Security, and against Plaintiff Tracy Jean Pieper.

IT IS SO ORDERED.

Dated:  **July 28, 2021**          **/s/ Gary S. Austin**
                                                         UNITED STATES MAGISTRATE JUDGE